```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

**RYAN E. CUNNINGHAM,**

    **Plaintiff,**

**v.**                           **Civil Action No. 2:11-cv-0142**

**RONALD F. LEGRAND and**
**LEGACY DEVELOPMENT SC**
**GROUP, LLC,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending is the motion to dismiss of defendants Ronald F. LeGrand and Legacy Development SC Group, LLC (collectively, "defendants"), filed May 25, 2011.

### I.  Background and Procedural History

Plaintiff Ryan E. Cunningham is a West Virginia citizen primarily in the business of procuring commercial real estate. (First Am. Compl. ¶¶ 1, 5).  At issue in this action are his dealings with defendant Ronald F. LeGrand, a citizen of Florida, and Legacy Development SC Group, LLC ("Legacy"), a Florida limited liability company that LeGrand manages and directs.  (Id. ¶¶ 2, 23).  The rather convoluted background of this dispute, as set forth in the first amended complaint and incorporated

documents, is as follows.

In 2006, plaintiff was approached by Kenneth Gwynn, then an agent and partner of LeGrand. (Id. ¶ 5). Gwynn inquired whether plaintiff was interested in purchasing land in South Carolina. (Id.). Plaintiff declined to participate in any South Carolina land deal, but instead identified property in West Virginia and Kentucky that Gwynn and LeGrand might consider purchasing. (Id. ¶ 5). In particular, plaintiff, who has significant experience in the oil and natural gas industries, alerted Gwynn to certain oil- and gas-producing property located in Roane and Gilmer Counties in West Virginia and in Boyd and Greenup Counties in Kentucky, owned by an entity referred to as Buffalo Properties (the "Buffalo property"). (Id.). Plaintiff informed Gwynn that the Buffalo property was involved in a bankruptcy proceeding and was to be sold at public auction. (Id. ¶ 6). Gwynn represented to plaintiff during this initial conversation that he and LeGrand had access to as much as $1 billion in investor capital to purchase and manage the Buffalo property. (Id.).

Gwynn thereafter visited the Buffalo property and informed plaintiff that he and LeGrand wanted to acquire it. (Id. ¶ 7). According to the complaint, plaintiff and Gwynn

2

reached a verbal agreement whereby the three of them -- plaintiff, Gwynn, and LeGrand -- would create a company to acquire and manage the Buffalo property and any oil and gas extracted therefrom. (Id. ¶ 8). Pursuant to the verbal agreement, plaintiff was to have a twenty percent equity interest in and operational control of the proposed management company. (Id.). Gwynn and LeGrand also agreed to provide plaintiff a personal residence near the Buffalo property and access to LeGrand's personal aircraft in traveling to and from South Carolina, where plaintiff had ongoing business. (Id.).

In October 2006, plaintiff, Gwynn, and LeGrand created Mountain Country Parties LLC ("Mountain Country"), a West Virginia limited liability company, to manage the Buffalo property. (Id. ¶ 9). Consistent with the verbal agreement, Mountain Country's operating agreement provided plaintiff a twenty percent equity interest in the company. (Id. ¶¶ 9, 12). LeGrand and Gwynn were also named minority owners. (Id. ¶¶ 10, 12). LeGrand exercised substantial control over Mountain Country, however, inasmuch as the operating agreement provided him a majority voting interest and designated him as the company's manager. (Id. ¶ 10). At some point in late 2006, Mountain Country acquired the Buffalo property at public auction

for $7.1 million.  (Arbitration Response at 2, attached as Ex. 2 to First Am. Compl.).

The crux of this action concerns the subsequent execution and assignment of two promissory notes.  First, in late 2006, Gwynn attempted to sell a percentage of his stock in Mountain Country to a separate entity controlled by LeGrand.  (First Am. Compl. ¶¶ 12-13).  LeGrand agreed to purchase three percent of Gwynn's ownership interest in Mountain Country for $2.4 million, but represented that Gwynn would have to execute a promissory note in favor of Mountain Country before his stock in the company could be transferred.  (Id.).  A promissory note was required, according to LeGrand, due to a rule of the U.S. Securities and Exchange Commission prohibiting the outright sale of stock in an entity during the entity's first year of existence.  (Id.).  LeGrand allegedly assured Gwynn that the note was a mere formality and would be forgiven before it matured.  (Id.).  Accordingly, on January 1, 2007, Gwynn executed a promissory note in favor of Mountain Country for $2.4 million, and LeGrand subsequently acquired three percent of Gwynn's interest in Mountain Country for that same amount.  (Assignment of Promissory Note and Security Interest at 1, attached as Ex. 1 to First Am. Compl.; First Am. Compl. ¶ 12).

In February 2007, plaintiff came to believe that LeGrand had purchased a portion of Gwynn's stock in Mountain Country for $2.4 million and demanded the same accommodation. (First Am. Compl. ¶ 12). LeGrand agreed to purchase 2.5 percent of plaintiff's stock, but required that plaintiff also execute a promissory note in favor of Mountain Country. (<u>Id.</u> ¶ 13). LeGrand made the same representations to plaintiff as he made to Gwynn, namely, that execution of a promissory note was merely a formality and that the note ultimately would be forgiven. (<u>Id.</u> ¶¶ 12-13). On March 26, 2007, plaintiff executed a promissory note in favor of Mountain Country for $1.025 million, and LeGrand purchased 2.5 percent of plaintiff's stock in Mountain Country for $2 million. (Note at 1, attached as Ex. 1 to First Am. Compl.; First Am. Compl. ¶ 13). The note was secured by plaintiff's remaining 17.5 percent ownership interest in Mountain Country and any distributions he received as an owner of Mountain Country. (Note at 1, attached as Ex. 1 to First Am. Compl.).

Plaintiff next alleges that, in July 2008, LeGrand fraudulently transferred the promissory notes executed by plaintiff and Gwynn. (First Am. Compl. ¶ 22). Specifically, plaintiff alleges that Mountain Country owed roughly $3.4 million to an investor named Mark Dain. (<u>Id.</u>). When Dain threatened to

5

sue Mountain Country for the money owed, LeGrand satisfied the debt with funds from defendant Legacy, the company that he manages and directs. (<u>Id.</u>). LeGrand then assigned the notes executed by plaintiff and Gwynn, which totaled $3.425 million, from Mountain Country to Legacy. (Assignment of Promissory Note and Security Interest at 1, attached as Ex. 1 to First Am. Compl.). Plaintiff alleges LeGrand simply "gave away" the notes, causing him and Gwynn, as minority owners of Mountain Country, severe financial hardship. (First Am. Compl. ¶¶ 24, 30).

In July 2010, plaintiff filed a complaint for injunctive relief in the Circuit Court of Kanawha County, West Virginia, naming as defendants LeGrand and Mountain Country. (First Am. Compl. ¶ 15; <u>see also</u> Complaint for Injunctive Relief at 1, attached as Ex. 1 to Defs.' Mot. to Dismiss). Plaintiff sought an order enjoining "the alienation and disposition of property and assets held by Mountain Country . . . due to an ongoing fraud being committed by [LeGrand]." (Complaint for Injunctive Relief at 7, attached as Ex. 1 to Defs.' Mot. to Dismiss). Plaintiff also sought an order "directing defendants Mountain Country . . . and Ronald LeGrand to provide plaintiff . . . access to all corporate records including all investor contact information, the corporate office, and that he be given

operating control of Mountain Country." (Id.).

Notwithstanding the state court action, plaintiff thereafter initiated an arbitration proceeding against LeGrand and Mountain Country in Jacksonville, Florida. (First Am. Compl. ¶ 15). Among other things, plaintiff alleged that LeGrand had "disposed of real property . . . belonging to Mountain Country without accounting for the proceeds to the members"; had excluded plaintiff from exercising any control over Mountain Country; and was "running Mountain Country . . . into the ground because the company is under-capitalized, fails to pay its obligations as they become due, and has virtually no on-the-ground competent management." (Letter concerning arbitration proceeding, attached as Ex. C to Defs.' Mot. to Dismiss). As a result, plaintiff sought in arbitration an order declaring, inter alia, "that some or all of the note [executed by him and] payable to [Mountain Country] . . . be declared void for fraud, duress and misrepresentation." (Arbitration Statement at 15, attached as Ex. D to Defs.' Mot. to Dismiss). LeGrand and Mountain Country raised their own counterclaims against plaintiff, alleging that he had violated various duties owed to Mountain Country. (Mem. Supp. Defs.' Mot. to Dismiss at 3).

By order entered November 5, 2010, the Circuit Court of

Kanawha County granted plaintiff's record request in the state court action. (Order at 2, attached as Ex. B to Defs.' Mot. to Dismiss). In light of the pending arbitration proceeding, however, the Circuit Court further ordered that the state action be stayed pending arbitration. (Id.).

On March 2, 2011, plaintiff received a letter from Thomas J. Fraser, Jr., counsel for Legacy (the "Fraser letter"). (First Am. Compl. ¶ 28). In pertinent part, the Fraser letter alerted plaintiff that Legacy (which, due to the assignment by LeGrand, was the holder of plaintiff's promissory note to Mountain Country) had "reason to believe that [plaintiff had] become financially unstable" and had "filed in the public records of the State of West Virginia statements in derogation of the value of the Collateral" securing his promissory note (i.e., plaintiff's equity interest in Mountain Country). (Fraser Letter, attached as Ex. 1 to First Am. Compl.). The Fraser letter demanded that plaintiff "provide an additional $400,000 in acceptable collateral or reduce the outstanding obligation by paying $400,000 to Legacy." (Id.). In the event plaintiff failed to comply with this demand, Legacy threatened to "take such action in regard to [his] Default as it deems appropriate." (Id.).

On March 4, 2011, two days after receiving the Fraser letter, plaintiff instituted this action against defendants LeGrand and Legacy.  On May 11, 2011, plaintiff filed his first amended complaint, which the court understands to raise two claims: an obstruction of justice claim, and a claim for declaratory judgment.[1]  (First Am. Compl. ¶¶ 26-29).  As to his claim for obstruction of justice, plaintiff seeks "actual damages in the form of all attorneys' fees and costs of this proceeding and such punitive damages as the jury shall determine are necessary to punish the Defendants and to dissuade others similarly situated from similar conduct in the future."  (First Am. Compl. at 8-9).  With respect to his declaratory judgment claim, plaintiff seeks an order declaring the following:

> (1) that the note plaintiff executed in favor of Mountain Country is not currently in default;
>
> (2) that the assignment of such note from Mountain Country to Legacy was a fraudulent transfer;
>
> (3) that Legacy was not a bona fide purchaser of the note;
>
> (4) that the note was induced by fraud and is thus void; and

---

[1] The first amended complaint fails to separate each claim for relief into separate counts, notwithstanding the pleading requirements set forth in Federal Rule of Civil Procedure Rule 10(b) and the court's May 10, 2011, memorandum opinion and order directing that he do so.

    (5) that Legacy knew the note was void when it received the note from Mountain Country.

(<u>Id.</u> at 8). As mentioned, defendants moved on May 25, 2011, to dismiss the first amended complaint for failure to state a claim upon which relief can be granted.

## II. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 563); <u>see also</u> <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v.</u>

**Iqbal**, 129 S. Ct. 1937, 1949 (2009) (quoting **Twombly**, 550 U.S. at 570); see also **Monroe v. City of Charlottesville**, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" **Erickson**, 127 S. Ct. at 2200 (quoting **Twombly**, 127 S. Ct. at 1965); see also **South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.**, 372 F.3d 245, 255 (4th Cir. 2004) (quoting **Franks v. Ross**, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." **Edwards v. City of Goldsboro**, 178 F.3d 231, 244 (4th Cir. 1999).

### III.  Analysis

A.    Obstruction of Justice

Plaintiff first claims that the Fraser letter -- wherein counsel for Legacy questioned plaintiff's financial stability and demanded that he reduce the debt owed on his promissory note by $400,000 or provide additional collateral worth that same sum -- amounted to an obstruction of justice, in contravention of West Virginia Code § 61-5-27(b)(3).  That

provision criminalizes the use of "intimidation, physical force, harassment or a fraudulent legal process or official proceeding, or to threaten or attempt to do so, with the intent to . . . [i]nfluence, delay or prevent the testimony of any person in an official proceeding." W. Va. Code § 61-5-27(b)(3). In addition to criminal penalties, one who violates this or any other provision in § 61-5-27 "is liable in a civil action to any person harmed by the violation for injury or loss to person or property incurred as a result of the commission of the offense." Id. § 61-5-27(f).

Plaintiff alleges that defendants contravened § 61-5-27(b)(3), rendering them liable in a civil action pursuant to § 61-5-27(f), by mailing the Fraser letter, which plaintiff alleges constituted an exercise of intimidation. Specifically, plaintiff's obstruction of justice allegations, in their entirety, are as follows:

> 28. In order to prevent [plaintiff] from bringing to completion the arbitration in Florida that sought to reform the Operating Agreement of Mountain Country . . . and impede or prevent [plaintiff]'s testimony, both Defendants caused the [Fraser letter to] be sent to [plaintiff].
>
> 29. The aforesaid letter was an exercise in "intimidation" in that it tacitly threatened litigation in Duval County, Florida unless $400,000 were paid to Mr. LeGrand in his capacity as controlling member of Defendant Legacy.

>    ...
>
>    32. The [Fraser letter] was a deliberate attempt to obstruct justice and prevent a full and fair resolution of [plaintiff]'s claims under the Operating Agreement of Mountain Country . . . in a duly constituted arbitration proceeding under West Virginia law pursuant to an Order of the Circuit Court of Kanawha County, West Virginia, which Order referred the case to arbitration in Duval County, Florida.

(First Am. Compl. ¶¶ 28-29, 32 (emphasis omitted)).

In their motion to dismiss, defendants contend that dismissal of plaintiff's obstruction of justice claim is warranted inasmuch as he has failed to allege that he was in any way harmed by the Fraser letter.  Defendants emphasize that, notwithstanding the letter, the parties went forward with the arbitration proceeding and plaintiff in fact testified during that proceeding.  (Defs.' Mem. in Supp. Mot. to Dismiss at 13).  Accordingly, defendants conclude that plaintiff has failed to state a claim upon which relief can be granted.

The court agrees that plaintiff has failed to allege any specific harm flowing from his receipt of the Fraser letter.  Even assuming, as plaintiff alleges, that defendants sent the Fraser letter intending to prevent, obstruct, or otherwise influence his or another individual's testimony at the arbitration proceeding, defendants are liable in a civil action

only to those persons "harmed by the violation." W. Va. Code 61-5-27(f). Thus, for his obstruction of justice claim to survive defendants' motion to dismiss, plaintiff must allege an injury that was the proximate result of defendants' conduct. Id.; see also Lovell v. State Farm Mut. Ins. Co., 213 W. Va. 697, 702, 584 S.E.2d 553, 558 (2003).

Nowhere in plaintiff's first amended complaint does he allege injury or loss to person or property due to his receipt of the Fraser letter. Indeed, it appears that defendants' alleged violation had no impact on plaintiff whatsoever. Plaintiff cites to testimony from the arbitration proceeding in his first amended complaint, suggesting to the court that the proceeding in fact occurred as scheduled despite the letter. (First Am. Compl. ¶ 12). Although it is unclear whether plaintiff testified during the arbitration proceeding (though defendants claim he did), he does not allege, in keeping with § 61-5-27(b)(3), that defendants' conduct precluded him or anyone else from so testifying. Inasmuch as plaintiff fails to allege any other harm resulting from his receipt of the Fraser letter, the court concludes that he has failed to state a claim upon which relief can be granted. Accordingly, plaintiff's obstruction of justice claim is dismissed without prejudice.

B.  Declaratory Judgment

Plaintiff next invokes the Declaratory Judgment Act and seeks an order declaring that: (1) there is no default on his promissory note; (2) his note was fraudulently induced by LeGrand's misrepresentations; (3) the note was fraudulently transferred from Mountain Country to Legacy; (4) LeGrand and Legacy knew that the note had been induced by fraud; and (5) Legacy therefore was not a bona fide purchaser of the note. (First Am. Compl. at 8).  In their motion to dismiss, defendants contend that plaintiff has failed to set forth sufficient factual allegations to warrant issuance of a declaratory judgment. (Defs.' Mem. in Supp. Mot. to Dismiss at 7-12).  In essence, then, defendants contend that plaintiff lacks standing under the Declaratory Judgment Act.

To establish standing under the federal Declaratory Judgment Act, a plaintiff must present the existence of a substantial controversy between parties having adverse interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment.  <u>Scott v. Pasadena Unified Sch. Dist.</u>, 306 F.3d 646, 658 (9th Cir. 2002).  Whether the subject of a declaratory judgment action is a sufficiently live controversy

15

rather than an abstract question "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id.

Although the factual allegations set forth in support of the declaratory judgment claim are sparse, the court is satisfied that plaintiff has alleged sufficient facts to demonstrate statutory standing under the Declaratory Judgment Act.  The facts alleged by the plaintiff demonstrate that he executed the promissory note only upon LeGrand's representation that the note was a formality and would ultimately be forgiven; that LeGrand, in his capacity as manager of Mountain Country, assigned plaintiff's note to Legacy without receiving adequate consideration in return, harming plaintiff as a minority owner of Mountain Country; and that Legacy has since threatened to place the note in default.  (First. Am. Compl. ¶¶ 13, 24, 28-29).  In light of these allegations, plaintiff's interests are plainly

16

adverse to those of defendants, and Legacy's threat makes the need for a declaration by the court sufficiently immediate and real.  Accordingly, the court is satisfied that plaintiff has met the requirements for statutory standing.

### IV.  Conclusion

Pursuant to the foregoing analysis, it is ORDERED that defendants' motion to dismiss be, and it hereby is, granted insofar as it seeks dismissal of plaintiff's obstruction of justice claim, and denied in all other respects.  It is further ORDERED that plaintiff's obstruction of justice claim be, and it hereby is, dismissed without prejudice.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: August 9, 2011

John T. Copenhaver, Jr.
United States District Judge