**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**RYAN E. CUNNINGHAM,**

**Plaintiff,**

**v. Civil Action No. 2:11-0142**

**RONALD F. LEGRAND and LEGACY DEVELOPMENT SC GROUP, LLC,**

**Defendants.**

# MEMORANDUM OPINION AND ORDER

Pending is defendants' brief containing their proposal for the form of the court's judgment order, filed September 7, 2012.

## I.

The factual development that follows is taken from the memorandum opinion and order entered today that denies Mr. Cunningham's motion for judgment as a matter of law.

Mr. Cunningham alleged in this action that he desired to sell some stock he owned in a limited liability company called Mountain Country Partners, LLC. As a condition of receiving the stock sale proceeds, he asserted that the managing member of Mountain Country Partners, LLC, defendant Ronald LeGrand, first required him to sign a promissory note. Mr.

**Cunningham was also required by Mr. LeGrand to sign an accompanying security agreement.**

**Mr. Cunningham alleged that Mr. LeGrand told him the signed documents were necessary in order to comply with a federal securities regulation. He asserted he was assured by Mr. LeGrand that the note and security agreement were mere formalities never to come due and owing. It is undisputed that Mr. Cunningham signed the two documents and received the promised $1.025 million from Mountain Country Partners, LLC.**

**Mr. LeGrand, on behalf of Mountain Country Partners, LLC, later transferred the note and security agreement to defendant Legacy Development SC Group, LLC ("Legacy"), a limited liability company also managed by Mr. LeGrand. Legacy later demanded that Mr. Cunningham pay the amount due on the note.**

**Mr. LeGrand denied throughout that he told Mr. Cunningham that the note and security agreement were mere formalities that would never come due. Legacy asserts that the $1.025 million received by Mr. Cunningham was a loan that must be repaid according to the note's terms.**

**Mr. Cunningham pled three claims for relief in this action. First, he asserted that there was no consideration for either the note or security agreement that he entered into with**

Mountain Country Partners, LLC. Second, he asserted that the note and security agreement were a sham transaction that neither he, Mountain Country Partners, LLC, nor Mr. LeGrand intended to be binding. Third, he claimed that he was induced to enter into the note and security agreement by fraud inasmuch as Mr. LeGrand allegedly told him that the note and security agreement were mere formalities that would never come due and owing.

Legacy asserted a counterclaim for breach of contract against Mr. Cunningham arising out of his failure to comply with the terms of the note and security agreement.

Trial commenced August 28, 2012, and concluded with the jury's August 30, 2012, verdict. The court fashioned special interrogatories that were submitted to the jury. The jury's answers to those questions resulted in the defendants' entitlement to a money judgment on the note, with interest to be determined by the court. The matter of interest had not previously been joined in the case given the parties' central differences on the nature of the underlying transaction. The late and contingent ripening of the matter of interest is indicated by the following colloquy between the court and counsel immediately preceding closing arguments:

> THE COURT: And are the parties in agreement that if the jury reaches the last question on the form having to do with a finding, should the jury make it, that Mr.

**Cunningham had defaulted on the note and security agreement, is it the agreement of the parties that the jury may be informed that such a result would result in a verdict for the defendant Legacy in the amount of the note of 1,025,000 dollars, together with interest, and further that in such case, it would be for the court to fix the amount of interest? Is that agreeable with the defendant, first of all?**

**MR. NEELY: Yes, sir[, for the plaintiff].**

**MR. HISSAM: Yes, it's agreeable with the defendants, Your Honor.**

**(Trans. at 248).**

**Based upon the jury's finding that Mr. Cunningham defaulted on his obligations under the note and security agreement, the court is now obliged to calculate the interest due and owing. The note, dated March 26, 2007, specifies as follows:**

**FOR VALUE RECEIVED, the undersigned Ryan E. M. Cunningham hereinafter called "Maker") unconditionally promises to pay to the order of Mountain Country Partners, LLC, a West Virginia limited liability company, and its successors and assigns (hereinafter called the "Holder") . . . the principal sum of One Million Twenty-Five Thousand Dollars ($1,025,000.00), together with interest at the rate of five percent (5%) per annum from the date of this Note, on March 26, 2017 (the "Maturity Date").**

**. . . .**

**Maker agrees if full payment is not made within (15) days after the Maturity Date or any earlier acceleration of this Note, Holder may charge and collect from Maker a late charge equal to five (5%) percent of the amount due on such date. . . . <u>From the date of any actual or deemed default by Holder, interest shall accrue on the principal balance at the highest lawful rate of interest allowable under the commercial laws of the State of Florida</u> . . . .**

> **Upon the occurrence of a default, Holder enjoys all the remedies provided under . . . the "Security Agreement" . . . and of a secured creditor under the Uniform Commercial Code for the State of Florida. Notwithstanding such default rights, interest and remedies, no circumstances shall entitle Holder to receive at any time any charges not allowed or permitted by law or any interest in excess of the maximum allowed by law.**

**(Defs.' Tr. Ex. 1 (emphasis added)).[1]**

**On October 16, 2012, Legacy became the subject of an involuntary bankruptcy proceeding in the District of South Carolina. All action was thus suspended herein until May 14, 2013, at which time Legacy advised the court that the bankruptcy court had granted relief from the automatic stay on April 25, 2013.**

**[1] Pursuant to paragraph 6 of the Security Agreement, which governed decreases in collateral value, Legacy notified Mr. Cunningham on March 2, 2011, that he was obliged to provide additional collateral valued at, or reduce his debt obligation by, $400,000. He was further notified that his failure to do so would be treated as a default. When Mr. Cunningham failed to do so, he was deemed in default and the payment obligation was accelerated.**

**II.**

**A. Interest**

**A two-part calculation appears appropriate under the terms of the note. First, a portion of the interest accrues from the date of the note forward to default, which is March 19, 2011. The rate for that period is five percent, resulting in an interest amount of $204,157.53. Second, the balance of interest due and owing following default is "the highest lawful rate of interest allowable under the commercial laws of the State of Florida . . . ." (Id.) That interest amount, however, is limited by the savings clause above that restricts "any interest" to "the maximum allowed by law." The defendants assert as follows:**

> **Florida law provides that, for loans exceeding $500,000 in amount or value, the highest rate of interest allowable is 25% per year. Fla. Stat. § 687.03 (setting rate of 18% unless amount loaned is greater than $500,000, in which case maximum rate is set by Fla. Stat. § 687.071); Fla. Stat. § 687.071 (setting 25% as maximum allowable rate). Accordingly, from the date of default, the rate of interest to be applied to the principal is 25% per year.**

**(Defs.' Brief on Jgt. Ord. at 3).**

**The court previously concluded that Florida law governed the note and the security agreement:**

> Generally, West Virginia will recognize the parties' choice of law provision "unless the chosen state has no substantial relationship to the parties to the transaction or unless the application of the law would be contrary to the fundamental public policy of the state whose law would apply in the absence of a choice of law provision." Bryan v. Mass. Mut. Life Ins. Co., 364 S.E.2d 786, 790 (W. Va. 1987). See also Gen. Elec. Co. v. Keyser, 275 S.E.2d 289, 293 (W. Va. 1981); cf. Lee v. Saliga, 373 S.E.2d 345, 351 (W. Va. 1988) ("Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy.").
>
> Both instruments bear a relationship to Florida inasmuch as LeGrand . . . is a citizen of Florida. In addition, Legacy (the current holder of the note and security agreement) is a Florida limited liability company. Because the court is not aware of any fundamental public policy that would be offended by the application of Florida law, and because plaintiff does not object to application of Florida law, the choice of law provisions are deemed valid. Thus, the note and security agreement, as well as defendants' counterclaim for breach of contract, are governed by Florida law.

Cunningham v. LeGrand, No. 2:11-0142, slip op. at 14-15 (S. D. W. Va. Jun. 5, 2012)(emphasis added). While Mr. Cunningham earlier did not object to the application of Florida law, he now asserts that, "The [note's] demand for penalty interest in the amount of $476,509.02 is clearly usurious and contrary to well established West Virginia law, e.g., the Bryan and General Electric cases

cited by the Court" in its June 5, 2012, memorandum opinion and order. (Pl.'s Resp. at 2).[2]

As support for his assertion, Mr. Cunningham cites West Virginia Code section 47-6-5(b), which provides as follows:

> Parties may contract in writing for the payment of interest for the loan or forbearance of money at a rate not to exceed eight dollars upon one hundred dollars for a year, and proportionately for a greater or less sum, or for a longer or shorter time, including points expressed as a percentage of the loan divided by the number of years of the loan contract.

W. Va. Code § 47-6-5(b). There is a more recent statutory enactment, however, that must be considered. West Virginia Code section 47A-1-1 created the West Virginia Lending and Credit Rate Board ("Board"). The Board is authorized

> to prescribe semiannually the maximum interest rates and finance charges on loans, credit sales or transactions, forbearance or similar transactions made pursuant to this section subject to the provisions, conditions and limitations hereinafter set forth and to authorize lenders, sellers and other creditors to charge up to the maximum interest rates or finance charges so fixed. The rates prescribed by the board are alternative rates and any creditor may utilize either the rate or rates set by the board or any other rate or rates which the creditor is permitted to charge under any other provision of this code.

---

[2] Though he now raises multiple West Virginia contacts with the execution and performance of the note and security agreement, the court does not understand Mr. Cunningham to seek reconsideration of the validity of the entire choice-of-law analysis. Mr. Cunningham instead appears to desire a declaration that the default interest provision found in the note is unenforceable as violative of West Virginia public policy on usurious contracts.

Id. The most recent rate setting executive order by the Board, dated October 5, 1999, directs as follows:

> As an alternative to any statutory rate, any person [which defined in West Virginia Code §31A-1-2(n) means "any individual, partnership, society, association, firm, institution[], company, public or private corporation, state, governmental agency, bureau, department, division or instrumentality, political subdivision, county court, municipality, trust, syndicate, estate or any other legal entity whatsoever, formed, created or existing under the laws of this State or any other jurisdiction"] may charge a maximum finance charge not exceeding eighteen percent per annum calculated according to the actuarial method, on all loans, credit sales or transactions, forbearance or similar transactions, regardless of purpose.
>
> This Order is effective December 1, 1996 and, pursuant to West Virginia Code §47A-1-1(g), shall remain in full force and effect until such time as the Board meets and prescribes different maximum rates of interest and/or maximum finance charges.

(W. Va. Exec. Ord. at 2 (Oct. 5, 1999), available at http://www.dfi.wv.gov/about/Documents/WVLendingandCreditRateBoardOrderOct1999.pdf). The maximum applicable interest rate on the note is thus 18%.

Mr. Cunningham additionally relies upon West Virginia Code section 47-6-6, seeking to escape entirely an interest obligation on the note and, additionally, to penalize the defendants for using a putatively usurious rate:

> All contracts . . . made directly . . . for the loan . . . at a greater rate of interest than is permitted by law shall be void as to all interest provided for in any such contract . . . and the borrower or debtor may, in addition, recover from the original lender or

> creditor or other holder not in due course an amount equal to four times all interest agreed to be paid and in any event a minimum of one hundred dollars. Every usurious contract . . . shall be presumed to have been wilfully made by the lender . . . , but a bona fide error, innocently made, which causes such contract or assurance to be usurious shall not constitute a violation of this section if the lender or creditor shall rectify the error within fifteen days after receiving notice thereof.

W. Va. Code § 47-6-6 (emphasis added).

The applicable choice of law rules are the same as applied by the court at summary judgment. When exercising diversity jurisdiction, a federal district court must apply the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Volvo Const. Eqpt. N. Am., Inc. v. CLM Eqpt. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004). Thus, the conflicts rules of West Virginia apply.

The procedural posture of the case, however, has changed considerably since the June 5, 2012, summary judgment order in which the court concluded Florida law applied to the parties' contractual dispute. Now that the jury has rendered its verdict, the focus is on the interest due and owing under the note. The court must thus determine the applicable post-default interest rate from the face of the note. The note initially mentions "the highest lawful rate of interest allowable under the

commercial laws of the State of Florida" as the applicable measure. Though that rate would presumably be 25% if Legacy's counterclaim were being maintained in Florida, it is inapplicable here inasmuch as it would offend a fundamental tenet of the public policy of West Virginia, the site of the forum where enforcement of the note obligation is sought. See, e.g., General Elec. Co. v. Keyser, 166 W. Va. 456, 463, 275 S.E.2d 289, 293 (1981) ("The most significant reason for denying effect to choice of laws provisions in usury cases is the strong public policy surrounding usury laws . . . .").

Since the note's 25% interest obligation may not be used, the court returns to the face of the note, which additionally specifies that "interest [thereon shall not be] in excess of the maximum allowed by law." The "maximum allowed by law" in this action is 18%, the maximum lawful West Virginia rate. It is with this rate that the court will calculate the balance of interest due and owing following default. This analysis also necessarily negates application of both the interest bar and the quadruple damage provision found in section 47-6-6.[3]

---

[3] The quadruple damage provision is inapplicable. The original lender on the note, Mountain Country Partners, LLC, is not a party to this action; and, as discussed more fully infra, Legacy is a holder in due course, which status exonerates it from (continued . . .)

**The defendants offer two contentions to avoid this result. First, they assert that Mr. Cunningham never raised the usury defense affirmatively at an earlier juncture. It is true that the defense would ordinarily be deemed waived under such circumstances. The facts necessary for disposing of the defense, however, did not require development through discovery. The matter of interest was simply not an issue in the case until the jury rendered its verdict. It is thus appropriate for Mr. Cunningham to have advanced his usury challenge at that point.[4]**

---

**the penalty according to the statutory text of section 47-6-6.**

**Even if the interest bar and the quadruple damages provision were somehow applicable, the court would not enforce either under the circumstances. The claim, in the nature of an offensive cause of action, simply comes too late. The claim was not a subject of the pretrial order and could have been pled at the outset. The presence of such a remarkable penalty at an earlier point in the action would doubtless have influenced the parties' litigation and settlement decisions. Allowing its use in the case now, after not receiving mention at the time for receiving motions pursuant to Federal Rule of Civil Procedure 50 as the defendants suggest, is thus quite prejudicial and foreclosed.**

**[4] The circumstances here bear no resemblance to those in Georgia Pacific Consumer Products, LP v. Von Drehle Corp., 710 F.3d 527 (4th Cir. 2013), a case in which the court of appeals found an abuse of discretion in the district court permitting a defendant to assert preclusion defenses 16 months after the defendant learned of the substantive basis for the defenses.**

**In Von Drehle, three months following an earlier remand by the court of appeals, Von Drehle moved to amend its answer to include affirmative defenses of claim and issue preclusion. The district court initially denied the request as untimely and prejudicial but, following a jury trial that ended in Georgia-Pacific's favor, it reconsidered, allowed the late-rising defenses and then entering judgment in Von Drehle's favor.**

**Unlike this case, Von Drehle moved to amend its answer not**

**(continued . . .)**

**Second, the defendants assert that "Plaintiff offers no authority to suggest that Florida's statutory maximum interest rate would offend West Virginia's fundamental public policy when applied to an arm's length transaction between sophisticated business partners." (Reply at 7). Neither section 47A-1-1 nor section 47-6-6, however, admit of such an exception.**

**In sum, no prejudice redounds to the defendants in allowing the usury defense to be considered at this stage of the case. As noted, it is only now when the court has, for the first time, undertaken to fix the interest due and owing on the obligation. Inasmuch as the matter of calculating interest did not arise until post-verdict, and would not have been adjudicated at an earlier point in the case pending the jury's findings, the court is unable to conclude that Mr. Cunningham failed to act seasonably. The court, accordingly, finds good cause supports considering the usury defense at this point in the case, especially inasmuch as it raises a profound issue of public**

---

**only post-judgment but post appeal. Second, 480 days elapsed between the defense coming available to Von Drehle and its initial request to rely upon the defenses in the district court. Third, the district court permitted the preclusion defenses post-judgment but failed to explain why, in doing so, it abandoned its earlier ruling in the case that Von Drehle unjustifiably delayed in pursuing them to Georgia-Pacific's prejudice. These factors and others distinguish <u>Von Drehle</u> from this action.**

**policy emphasized by both the Legislature and the court of last resort in this state.**

**B. Holder in Due Course**

**A finding respecting an additional matter is necessary prior to the entry of Judgment herein. The proposed Judgment includes a provision that treats Legacy as a holder in due course. The requirements for holder-in-due-course status under Florida law are as follows:**

> **The instrument when . . . negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and**
>
> **The holder took the instrument:**
>
> **1. For value;**
>
> **2. In good faith;**
>
> **3. Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;**
>
> **4. Without notice that the instrument contains an unauthorized signature or has been altered;**
>
> **5. Without notice of any claim to the instrument described in s. 673.3061; and**

> **6. Without notice that any party has a defense or claim in recoupment described in s. 673.3051(1).**

**Fla. Stat. Ann. § 673.3021; see also Daiwa Products, Inc. v. Nationsbank, N.A., 885 So. 2d 884, 888 (Fla. Dist. Ct. App. 4 2004) (noting "[A] 'holder in due course' is a 'holder who takes an instrument without 'apparent evidence of forgery or alteration" for value, in good faith, and without notice of certain claims and defenses.'") (citation omitted).**

**The court has previously discussed the issue of Legacy's status pursuant to section 673.3021. See Cunningham v. Legrand, No. 2:11-0142, slip op. at 26-31 (S.D. W. Va. Jun. 5, 2012). That discussion came at the summary judgment stage of the case. Summary judgment for the defendants was reserved based upon this observation:**

> **The question of Legacy's status as a holder in due course . . . depends on the resolution of . . . [a] crucial issue of fact. That is, if the factfinder determines that LeGrand fraudulently induced the note, and then later signed the assignment of the note for both the transferee and transferor, a lack of good faith, among other things, would be shown. Far from constituting good faith, such circumstances –- if proven -- would demonstrate the antithesis of reasonable commercial standards of fair dealing. In short, the disputed acts of fraud preclude summary judgment on plaintiff's request for a declaration that Legacy was not a holder in due course of plaintiff's note.**

**(Id. at 31). Inasmuch as the the jury's findings remove any**

impediment to Legacy qualifying as such, the court concludes that Legacy is entitled to the status of a holder in due course.

III.

Based upon the foregoing discussion, the court ORDERS as follows:

1. That the plaintiff be, and hereby is, permitted to raise his usury challenge at this stage of the case;

2. That the post-default interest rate of the note be, and hereby is, deemed limited to 18 percent per year and to that extent is not a usurious interest rate; and

3. That Legacy be, and hereby is, deemed a holder in due course.

The Clerk is directed to forward copies of this written opinion and order to counsel of record and any unrepresented parties.

DATED: June 10, 2013

John T. Copenhaver, Jr.
United States District Judge